UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALLISON CONBOY,
Plaintiff

v.

CITY OF MEDFORD
Defendant

# COMPLAINT AND JURY DEMAND

## PARTIES

1. Plaintiff Allison Conboy is a resident of Salem, Essex County, Commonwealth of Massachusetts.

2. Defendant City of Medford ("Medford") is an independent body politic established under the laws of the Commonwealth of Massachusetts, located in Medford, Middlesex County, Commonwealth of Massachusetts.

## FACTUAL ALLEGATIONS

3. At times relevant hereto, Plaintiff has been employed as a Senior Sanitarian by Medford.

4. Plaintiff's primary duties as Sanitarian are set forth in a recent [posting for the job on Medford's website](#), and include, *inter alia*,

1

5. Conducting necessary public health inspections regarding food sanitation compliance at locations including markets, retail food stores, restaurants, catering food service vehicles, and bakeries;

6. Conducting housing inspections for compliance with Chapter II of the Massachusetts Sanitary Code;

7. Conducting environmental investigations of potential public health and safety problems, such as garbage, trash, pests, and sewage, and other potential public health violations, in response to complaints or observations;

8. Responding to complaints; preparing reports of investigations and prepares materials for possible court action;

9. Providing inspections and enforcement in compliance with state and local codes;

10. Processing permit applications in accordance with State Sanitary Code and Board of Health Regulations;

11. Issuing citations and making appearances in court or at in-house Municipal Code hearings in cases of noncompliance with State Sanitary Code;

12. Preparing required reports in compliance with state requirements to ensure that the Board of Health has sufficient documentation and assists in maintaining department files and information;

13. Drafting enforcement orders to responsible parties and assisting with necessary legal action;

14. Conducting environmental investigations of swimming pools, bathing beaches and air and noise pollution complaints;

15. Reviewing plans for construction of septic systems, pursuant to Title V;

16. Providing educational seminars to food establishments and other related businesses as necessary;

17. Reviewing plans for new restaurants, tanning salons, swimming pools, Body Art establishments and other related businesses;

18. Assisting in developing proposed new bylaws and regulations dealing with environmental and public health concerns;

19. Reviewing bacteriology reports and reviewing water quality reports at least weekly for recreational waters during the bathing season between Memorial Day and Labor Day;

20. Preparing guides and other public information materials to inform the public and interested parties of the various regulations;

21. Maintaining knowledge and expertise of new developments in the fields of environmental and public health.

22. At times relevant hereto, Medford has scheduled Plaintiff's regular hours of work as:

23. 8:30 a.m. to 4:30 p.m. on Mondays, Tuesdays, and Thursdays;

24. 8:30 a.m. to 7:30 p.m. on Wednesdays; and

25. 8:30 to 12:30 p.m. on Fridays.

26. Although this work schedule comprises 39 hours, Medford has considered Plaintiff's compensable time worked on this schedule to comprise only 35 hours, based on its automatic deduction of one hour for meal breaks from Plaintiff's workdays on Mondays, Tuesdays, Wednesdays, and Thursdays.

27. At no time relevant to this action, however, has Plaintiff ever been totally relieved of all work-related duties during her workdays.

28. Rather, throughout her workdays, and before and after ther shift begins or ends, and with the knowledge of agents of Medford, Plaintiff performs work related to her job, including by returning or receiving phone calls; returning and receiving electronic communications; performing inspections in the field; reviewing permits, and handling and other job-related paperwork.

29. In addition to performing the work described above, from on or about February 18, 2020 to May 8, 2020, Medford assigned Plaintiff to perform work related to "contact-tracing," and from in or about July 2020 to December 2020, it assigned Plaintiff to run Covid-related clinics on weekends, and before and after her regularly scheduled hours of work.

30. During the time Medford assigned Plaintiff this work, Plaintiff consistently performed compensable time worked in excess of eight hours in her work days and 40 hours in her workweeks, including because she was required to work beyond her regularly scheduled hours of work, and to perform work on weekends.

31. Medford did not pay Plaintiff straight time or overtime wages for all the hours she worked while performing contact-tracing and clinic work, but continued to classify her as a salaried employee during this period.

**COUNT I**
**Failure to Pay FLSA Overtime Due to Misclassification**

32. Plaintiff repeats and incorporates by reference all allegations made herein.

33. [Section 207(a) of the Fair Labor Standards Act]("the FLSA") requires a covered employee to pay a covered employee 1.5 times the employee's regular rate of par for all hours the employee works in excess of 40 in the employee's normally recurring seven-day work workweeks. Hereinafter, this will be referred to as "FLSA Overtime".

34. At all times relevant hereto, Medford has been obligated to pay Plaintiff FLSA Overtime.

35. Indeed, under the FLSA, the only employees who can be lawfully classified as "exempt" from FLSA Overtime are those whom an employer can prove actually perform work, as a "primary duty", which falls within the narrow range of work that the FLSA defines as exempt from its overtime mandate. 29 C.F.R. § 541.700.

36. The FLSA defines "primary duty" to mean the "principal, main, major or most important duty the employee performs." *Id*.

37. An express provision of the FLSA's Regulations commands that an employee whose primary duty is to perform the inspection and code enforcement activities Plaintiff performs for Medford is not exempt from FLSA overtime:

> Ordinary inspection work generally does not meet the duties requirements for the administrative exemption. Inspectors normally perform specialized work along standardized lines involving well-established techniques and procedures which may have been catalogued and described in manuals or other sources. Such inspectors rely on techniques and skills acquired by special training or experience. They have some leeway in the performance of their work but only within closely prescribed limits. 29 C.F.R. § 541.203(g).

38. According to the Department of Labor's Field Operations Handbook ("FOH"), by this activity, inspectors and code enforcement officers don't meet the required standard for exempt work, which requires as a primary duty the "exercise [of] discretion or independent judgment with respect to matters of significance to the

6

management or general business operations that is necessary to qualify as exempt administrative employees." FOH, § 22j, Examples in Specific Occupations, 22j21.

39. Here, at all times relevant to this action, as confirmed by the activities Medford has used to describe Plaintiff's work in the position description linked hereto, summarized in above, Plaintiff's principal, main, and most important job duty as Sanitarian has indisputably consisted of her performance of the non-exempt activities described in the quoted Regulation, namely, performing inspections to determine compliance or violation of preestablished codes.

40. Similarly, the contact-tracing duties Medford required Plaintiff to perform did not exempt Medford from the obligation to pay her overtime when it assigned her that work, which regularly required her to work in excess of 40 hours in her seven-day workweeks.

41. At all times relevant hereto, therefore, the FLSA has required Medford to pay Plaintiff FLSA Overtime.

42. In violation of the FLSA therefore, Medford has violated the FLSA, because it did not pay Plaintiff FLSA Overtime.

43. By its violation of the FLSA, Medford has caused Plaintiff to suffer harm, injury, and damages.

44. Plaintiff has filed an FLSA Consent Form in this action in accordance with 29 U.S.C. § 216(b). (Ex. 1.)

## COUNT II
## Failure to Pay Overtime for "Off the Clock Work"

45.     Plaintiff repeats and incorporates by reference all allegations made herein.

46.     The FLSA requires a covered employer to pay its employees 1.5 times their regular rate of pay for all "hours worked" in excess of 40 in their regularly recurring seven-day workweeks.

47.     Under the FLSA, "hours worked" includes all time the employee suffers work or is permitted to suffer work. 29 C.F.R. § 553.221.

48.     Compensable hours worked under the FLSA include all time during which an employee is required to be on duty, and any time worked before or after the end of the normal shift to complete the work. 29 C.F.R. § 553.221(b).

49.     Work performed but not counted toward FLSA hours worked is commonly referred to as "off-the-clock work," and will be referred to as such herein.

50.     At times relevant hereto, Plaintiff has been scheduled for workweeks comprising a total of 39 hours, but due to Medford's automatic deduction of one hour of work from Plaintiff's workdays for meal breaks Monday to Thursday, Medford has only counted 35 hours of Plaintiff's scheduled hours as compensable.

51.     Medford's automatic deduction of this time, however, is illegal under the FLSA, which only permits deductions for meal breaks when an employer can prove that it has "completely relieved [the employee] for the purposes of eating regular meals." 29

8

C.F.R. § 785.19. The Regulations command further that "[t]he employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." *Id*.

52. Here, Medford never completely relieves Plaintiff from her duties, but requires or permits her to suffer work throughout her supposed meal breaks, including by requiring or permitting her, at all times throughout her workdays to return or receive work-related phone calls or other electronic communications, and to perform inspections or handle paperwork.

53. Furthermore, Medford also requires Plaintiff to perform these same activities before and after her scheduled shifts, but as in the case of the work Plaintiff performs during her supposed meal breaks, Medford has not and does not count this work as compensable.

54. Medford, by its agents, has known that Plaintiff has performed the off-the-clock work described above, including because Medford's agents have observed Plaintiff performing it; have ordered her to perform it; and on many occasions, have participated with Plaintiff in performing it, including by requiring Plaintiff to communicate and collaborate with them about work-related projects throughout her workdays, and after her scheduled shifts.

55. With respect to the period of time Medford required Plaintiff to perform contact-tracing work, Medford, by its agents, knowingly assigned Plaintiff to work well in excess of her normally scheduled hours, including on weekends.

56.     Plaintiff's off-the-clock work has benefited Medford, and Medford has accepted the benefit of this work, without counting it as compensable, or paying Plaintiff's wages for performing it, at either Plaintiff's straight time or overtime rate of pay.

57.     Pursuant to 29 U.S.C. § 207(a), Medford has been obligated to pay Plaintiff 1.5 times her regular rate of pay for all hours they worked in excess of 40 in her regularly recurring seven-day workweeks.

58.     Medford has violated 29 U.S.C. § 207(a) because it has failed to pay Plaintiff overtime wages due her under the law, including because it did not include the off-the-clock work described here that Plaintiff has performed in her regularly recurring seven-day workweeks, thereby depriving Plaintiff of overtime wages she has been due under the Fair Labor Standards Act.

59.     Plaintiff has been harmed, injured and damaged by Medford's illegal acts.

## COUNT III
### Failure to Pay Overtime Wages Required by G.L. c. 149, § 33B

60.     Plaintiff repeats and incorporates by reference all allegations made herein.

61.     At all times relevant hereto, G.L. c. 149, § 33B has obligated Medford to pay Plaintiff overtime wages for any authorized work Plaintiff might have performed in excess of eight hours in one of her workdays, or 40 hours in her workweeks.

62. Medford assumed the statutory obligations imposed by G.L. c. 149, § 33B by [accepting it on October 3, 1959](#).

63. As set forth above, throughout her employment, Plaintiff has performed authorized work in excess of eight hours on her workdays and 40 hours in her workweeks.

64. Indeed, at all times relevant hereto, on Wednesdays, Plaintiff has worked the 11 hours for which Medford has scheduled her work, but in violation of G.L. c. 149, § 33B, Medford has never paid her the three hours of overtime it is obligated to pay her for this work.

65. In further violation of G.L. c. 149, § 33B, Defendant has not paid Plaintiff overtime wages for the authorized work she performed in excess of eight hours in her workdays and 40 hours in her workweeks.

66. Furthermore, during the time period Medford assigned Plaintiff to perform contact-tracing work, Medford consistently required Plaintiff to perform work in excess of eight hours in workdays, but didn't pay her the mandated overtime wages for this work.

67. Medford's violation of the G.L. c. 149, § 33B has caused Plaintiff to suffer harm, injury and damages.

## COUNT IV
## Violation of the Massachusetts Wage Act, G.L. c. 149, § 148
## Failure to Make Timely Payment of Earned Wages

68. Plaintiff repeats and incorporates by reference all allegations made herein.

69. The Massachusetts Wage Act, G.L. c. 149, § 148 ("the Wage Act") covers Medford's employment of Plaintiff.

70. The Wage Act requires a covered employer to make timely payment of all earned wages to its employees.

71. A wage is earned under the Wage Act where the employee has completed the labor, service, or performance required of him. *Calixto v. Coughlin*, 481 Mass. 157, 160 (2018), *citing Awuah v. Coverall N. Am. Inc*, 460 Mass. 484 (2011).

72. Correspondingly, the Wage Act's requirement of timely payment is secured by virtue of the work or service actually performed. *Calixto*, 481 Mass. at 161, *citing Mass. State Police Commissioned Officers Ass'n v. Commonwealth*, 462 Mass. 219, 226 (2012).

73. Here, at times relevant hereto, Medford has not paid Plaintiff for all work she has performed in her workweeks.

74. Medford has not paid Plaintiff for all the work she performed in her workweeks because it has uniformly considered her workweeks to comprise 35 hours of compensable work, and only paid her for those 35 hours.

75. As a matter of law, however, and as set forth above, Plaintiff has throughout this period performed compensable time worked throughout the one hour meal breaks Medford has automatically deducted from her wages on Mondays, Tuesdays, Wednesdays, and Thursdays, and other compensable work before and after her scheduled shifts.

76. With respect to Medford's automatic meal break deductions, for example, under the Regulations promulgated by the Massachusetts Division of Occupational Safety for the Wage Act, "working time" is defined to include "all time during which an employee is required to be on the employer's premises or to be on duty, or to be at the prescribed work site, and any time worked before or beyond the end of the normal shift to complete the work." *Taggart v. Town of Wakefield*, 78 Mass. App. Ct. 421, 423-424, *quoting* 455 C.M.R. § 27.02.

77. Like any other Massachusetts regulation, this regulation must be given the weight of controlling law. *DeVito et al. v. Longwood Security Services*, 34 Mass.L.Rptr. 65 (2016), *citing O'Hara v. Menino*, 253 F.Supp.2d 147, 153 (2003).

78. Accordingly, any time an employee covered by the Wage Act is not totally relieved of duty must be considered compensable time worked, and cannot be subject to a deduction for a meal break or other reason. *Id*; *see also Devito et al. v. Longwood Security Services*, *supra*.

79. As Massachusetts law applies here, therefore, because Medford can't prove that it has fully relieved Plaintiff of all her duties for the one hour it has automatically deducted from her workdays for meal breaks, but instead, indisputably requires or permits her to suffer work throughout this period, or never fully relieves her from work during this period, it has violated the Wage Act, because it has not paid Plaintiff her earned wages for all compensable time worked during her alleged meal breaks, let alone within the time required by the Wage Act.

80. Likewise, while Medford assigned Plaintiff to perform contact-tracing work, it knowingly did not pay her for all hours she worked.

81. Medford's violation of the Wage Act has caused Plaintiff to suffer harm, injury and damages.

82. Plaintiff has satisfied all prerequisites to suit under G.L. c. 149, § 148.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follow:

A. Judgment awarding Plaintiff and all similarly situated employees all unpaid overtime compensation, liquidated damages, attorney's fees and costs as mandated under the FLSA, 29 U.S.C. § 216(b);

B.  Judgment awarding Plaintiff and all similarly situated employees all unpaid wages, treble damages, attorney's fees, and costs as mandated by G.L. c. 149, § 33B; G.L. c. 149, § 148 and § 150;

C.  An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

D.  All such other and further relief to which Plaintiff may show herself to be justly entitled.

Respectfully submitted,

PLAINTIFF ALLISON CONBOY

By her Attorney:

s/Daniel W. Rice
Daniel W. Rice, BBO # 559269
HARRINGTON, RICE & MAGLIONE, LLC
738 Main Street
Hingham, Massachusetts 02043
(781) 964-8377
dwr@harringtonrice.com

Dated: November 18, 2022

15